134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James H. HIGGASON, Jr., Petitioner-Appellant,
v.
Craig HANKS, Superintendent of the Wabash Valley
Correctional Institution, Respondent-Appellee.
 Nos. 97-1687 & 97-1688.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 19, 1997*.
Decided Jan. 7, 1998.
 
 Appeals from the United States District Court for the Southern District of Indiana, Terre Haute Division, Nos. TH96-121-C-M/H, TH96-271-C-M/H; Larry J. McKinney, Judge.
 Before FAIRCHILD, CUMMINGS, and MANION, Circuit Judges.
 
 ORDER
 
 1
 James Higgason is currently serving a 25-year sentence for burglary at the Wabash Valley Correctional Institution in Indiana. These two habeas appeals pursuant to 28 U.S.C. § 2254 each arise out of prison disciplinary hearings. In each, Higgason claims that the hearing officer was biased against him. Because the allegations of bias are similar in these two cases, we have consolidated them for decision. We find that the district court did not err in denying Higgason's habeas petitions, and affirm.
 
 I. Facts
 A. No. 97-1687
 
 2
 On October 13, 1995, Higgason began "bellowing" for his counselor to visit him and pick up legal mail Higgason wanted delivered. Counselor Meier was aware that Higgason wanted him to visit, but Meier was otherwise busy. Meier stated that Higgason was so loud, that "it was impossible to enter the range and accomplish anything." Meier wrote up a conduct report charging Higgason with disorderly conduct. Higgason was notified about the conduct report on October 20 and requested that Meier appear as his exculpatory witness.
 
 
 3
 The Conduct Adjustment Board (CAB) hearing was conducted by Hearing Officer West on October 31. Prior to the hearing, West secured a written statement from Meier, indicating that he had nothing more to add to his conduct report, which was presented at the hearing. Meier was not initially present at the hearing. After Higgason testified that several people were yelling, and that Meier would not have been unable to see who had been yelling, West brought Meier in to testify how he identified the source of the yelling. Higgason was found guilty, and sanctioned with the loss of 60 days of earned credit time, a two-month telephone restriction and a 90-day suspended segregation term.
 
 
 4
 Higgason appealed the result of the disciplinary hearing through the administrative appeal process of the Indiana Department of Corrections, but the appeal was denied. Higgason then filed a habeas petition in the district court on May 6, 1996. The District Court denied Higgason's petition, and denied a certificate of appealability. This court granted a certificate of appealability on the issue of bias of the hearing officer, and Higgason now appeals to this court, alleging 14 separate violations of his rights.
 
 B. No. 97-1688
 
 5
 On July 25, 1994, when Officers Baker and Daugherty escorted Higgason back to his cell from the prison recreation area, Higgason asked Officer Baker to bring him some soap. When Officer Baker returned to Higgason's cell with soap, she saw "Higgason sitting on his bunk, totally nude, holding his penis, staring straight at me. Higgason made no move to cover himself." Baker left and wrote up a conduct report for indecent exposure.
 
 
 6
 Higgason was notified of the conduct report on July 29, and requested that Baker appear as a witness. Hearing Officer Cottrell talked to Baker the day before the hearing and obtained a written statement from her which stated in its entirety: "I wrote a conduct report on Higgason, James # 856635 and have nothing to add." Baker did not appear at the disciplinary hearing. Higgason was found guilty, and punished by demotion from good time credit earning class I to II.[1] Higgason's administrative appeals were denied. Higgason filed a petition for habeas corpus in the district court, which was also denied. This court granted a certificate of appealability on the issue of whether Hearing Officer Cottrell was biased. Higgason now appeals to this court, alleging nine separate violations of his rights.
 
 II. Analysis
 
 7
 The right to an impartial decisionmaker is crucial to due process, even in the prison disciplinary context. See Wolff v. McDonnell, 418 U.S. 539, 592 (1974) (Marshall, J., concurring in part); id. at 571-72 (majority opinion). Thus, a prisoner is entitled to a "neutral and detached" adjudicator in a prison disciplinary hearing. Redding v. Fairman, 717 F.2d 1105, 1112 (7th Cir.1983). But simply alleging bias is not enough to support disqualification. Those who serve as adjudicators enjoy a presumption of honesty and integrity. See Withrow v. Larkin, 421 U.S. 35, 47 (1975). Thus, the constitutional standard for impermissible bias is high. "Certainly only in the most extreme of cases would disqualification on this basis be constitutionally required, and appellant's arguments here fall well below that level." Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986).
 
 
 8
 In both cases reviewed here, the hearing officer obtained a written statement from the charging officer that indicated that the officer had nothing to add to the information in the conduct report. Higgason charges that this conduct by the hearing officer amounted to an impermissible assumption of an investigatory function that biased the judge against him. This argument fails for two reasons. First, the fact that an adjudicator also performs investigatory functions in the same case is not a per se constitutional violation. See Withrow, 421 U.S. at 47-55. Second, even if the conduct by the hearing officers could be characterized as "investigation," Higgason does not show that the conduct actually prejudiced the hearing officer against him. Higgason claims that the written statements procured by the hearing officers were biased against him, but they clearly are not. The statements indicate merely that the charging officer has nothing to add to the conduct report.
 
 
 9
 From the record, it appears that the hearing officers in these cases were attempting merely to ascertain whether the physical presence of the charging officer was required in each case. While a prisoner has the right to present witnesses and documentary evidence in prison disciplinary hearings, the right is not unrestricted. Wolff, 418 U.S. at 566. In cases of "irrelevance, lack of necessity, or ... hazards presented in individual cases" prison officials can deny prisoners the right to present witnesses. By securing the written statements from the charging officers, the judges verified that the physical presence of the witness was unnecessary. Cf. Wolff, at 567-68 (no right to confrontation or cross-examination in prison disciplinary hearing).
 
 
 10
 Indeed, the events during the 1995 hearing support this interpretation. Officer West originally did not require Meier's presence at the hearing. However, when Higgason testified that Meier could not see who had been "bellowing," West brought Meier in to explain how he determined that Higgason was the offender. This shows that West was not biased against Higgason. West listened to Higgason's defense, then required the charging officer to respond. Thus, the discussions with the charging officers about the substance of their testimony prior to the hearing do not show impermissible bias.
 
 
 11
 Higgason makes further allegations of bias against Hearing Officer West. He alleges that Officer West commented at the hearing that there was a "personality conflict" between himself and Higgason, and that on "several occasions," West has referred to his court as a "kangaroo court" and to himself as "Captain Kangaroo;" that West was a security officer at the prison prior to becoming a hearing officer, and he has either developed friendships with or has a general loyalty towards "all security officers who draft conduct reports;" that West had a working relationship with Officer Meier, because Meier is also an adjudicator of less serious conduct reports, and that West has given out "more severe grievous sanctions than his CAB hearing officer predecessor." None of these allegations proves that West was specifically prejudiced against Higgason, as the constitutional standard of bias requires.
 
 
 12
 The general allegations that West has relationships with Meier or other prison security guards do not prove bias. In essence, Higgason's complaint is that West is a prison insider. Any adjudicator who is a prison insider is likely to have working relationships with other prison insiders, but Wolff does not disapprove of using prison insiders as adjudicators. See Wolff, 418 U.S. at 592 (Marshall, J., concurring in part) (constitution does not prevent "responsible prison officials" from sitting on prison disciplinary committee). Similarly, the fact that West issues more severe sanctions than his predecessor is not probative of whether West prejudged Higgason's specific hearing. West's comments during the hearing also do not show that West was biased against Higgason as to the matters before him that day; the context suggests that West was joking when he remarked that he had a "personality conflict" with Higgason.
 
 
 13
 Higgason did not receive a certificate of appealability as to any of the other issues that he presented in these two cases. However, one of these issues warrants some discussion. Higgason asserts that the state has a policy of not requiring prison employees who are requested by the prisoner to appear as witnesses in CAB hearings to attend the hearing. Instead, the employees are allowed to submit one-sentence written statements that indicate that the employee has nothing to add to the conduct report. Higgason alleges that this "policy" circumvents our ruling in Forbes v. Trigg, 976 F.2d 308 (7th Cir.1992). In Forbes, we held that a prison regulation that gave correctional officers complete discretion to appear at prison disciplinary hearings was unconstitutional. Id. at 318. We noted in that case that "where the underlying facts of the charged misconduct are in issue, the testimony of the charging officer would be relevant (and perhaps indispensable), and prison officials would have to offer some penological justification (such as those outlined in [Ind.Code Ann. 11-11-5-5(a)(5) ] ) for refusing to call such a witness." Id
 
 
 14
 The facts of the cases here show that there is no state policy to subvert Forbes. The fact that officers submit a written statement in lieu of live testimony does not in and of itself constitute a due process violation. Indiana allows a hearing officer to refuse to call a witness requested by a prisoner when "the person conducting the hearing finds that to do so would subject a witness to a substantial risk of harm, or would result in the admission of irrelevant or repetitive testimony." What is relevant in a disciplinary hearing is whether the prisoner committed the charged act. Higgason did not dispute the facts in his indecent exposure hearing, and the testimony he sought to elicit from Officer Baker was not relevant, so the refusal to call Baker was not error. But when Higgason contested the facts in his disorderly conduct hearing, Hearing Officer West called Officer Meier in to explain how he determined that Higgason was the offender. Thus, the facts here do not show a policy of attempting to subvert the rights of prisoners to call witnesses.
 
 
 15
 We continue to believe that none of the remaining issues presents a "substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(b)(2). Therefore, we will not consider these issues. The orders of the district court are AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeals are submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 While this court has never held that a demotion in good time credit earning class implicates a liberty interest cognizable under the Fourteenth Amendment Due Process Clause, we need not decide the issue here. Even if a demotion does implicate a liberty interest, Higgason's claim still fails